ALEC WEINSTEIN AND BEN WEINSTEIN, TRADING AS WEINSTEIN HIDE AND METAL COMPANY, v. THE CITY OF RALEIGH.

(Filed 21 May, 1941.)

**Municipal Corporations §42—**

The findings of fact made by the trial court under the agreement of the parties *are held* to support the court's conclusion of law that plaintiff, although his place of business was located one-half mile outside the limits of defendant municipality, was engaged in the business of buying and selling junk within the municipality, and the judgment holding plaintiff liable for license tax levied by the municipality under authority of the Revenue Act of 1939, ch. 158, is affirmed.

STACY, C. J., concurring in result.
BARNHILL and WINBORNE, JJ., join in concurring opinion.
SEAWELL, J., dissenting.
SCHENCK, J., concurs in dissent.

APPEAL by plaintiffs from *Pless, J.,* at February Term, 1941, of WAKE. Affirmed.

The judgment indicates the controversy, and is as follows :

"This cause was heard before J. Will Pless, Jr., Judge Presiding, without the intervention of a jury, upon the agreement of the parties that he could hear the evidence and find the facts and render judgment thereon. After hearing the evidence and the argument of counsel repre-

senting the plaintiff and the defendant the Court finds the following facts:

"1. The plaintiff is a resident of the City of Raleigh, and maintains and operates a junk business approximately one-half mile outside the limits of the City of Raleigh, which is a City of more than 30,000 population.

"3. The Legislature of 1939, passed the Revenue Act, being Chapter 158, Section 168, of the Public Laws of 1939, applying to junk dealers' licenses, as follows:

" 'Sec. 168. Every person, firm or corporation engaged in the business of buying and/or selling or dealing in what is commonly known as junk, including scrap metals, glass, waste paper, waste burlap, waste cloth and cordage of every nature, kind and description, shall apply for and obtain from the Commissioner of Revenue a State license for the privilege of engaging in such business in this State and shall pay for such license an annual tax for each location where such business is carried on, according to the following schedule:

" 'In unincorporated communities and in cities or towns of
  less than 2,500 population.................. ......... ......... ....... ....$ 25.00
  In cities or towns of 2,500 and less than 5,000 popula-
  tion ... ......... ........ ......... ..... ............................ .......... 30.00
  In cities and towns of 5,000 and less than 10,000....... .. . 50.00
  In cities or towns of 10,000 and less than 20,000.............. 75.00
  In cities or towns of 20,000 and less than 30,000. ......... .... 100.00
  In cities or towns of 30,000 population, or more . ......... 125.00

" 'Provided that if any person, firm or corporation shall engage in the business enumerated in this section within a radius of two miles of the corporate limits of any city or town in this State, he or it shall pay a tax based on the population of such city or town according to the schedule above set out. Counties, cities and towns may levy a license tax not in excess of one-half of that levied by the State; Provided, however, that any person, firm or corporation dealing solely in waste paper shall not be liable for said tax.'

"4. Thereafter the City of Raleigh adopted an ordinance in words and figures, as follows:

" 'Every person engaged in the buying and/or selling of material commonly known as junk, within the city or within a two-mile radius thereof, shall be deemed a "junk dealer" within the meaning of Section 168 of the State Revenue Act, and shall pay an annual license of $62.50.

" 'It shall be the duty of all junk dealers to register all articles purchased by them showing date of purchase, description of every article purchased, and the name of the party or parties from whom purchased;

and every article purchased by any junk dealer shall remain in their respective places of business for at least three days before being broken up or shipped; and it shall be the duty of such junk dealer to admit the chief of police or any other officer of the police department into their place of business at any time admittance may be demanded to inspect their books and stock of goods and any person violating any of the provisions of this section shall be guilty of a misdemeanor, and upon conviction shall be fined not more than $50.00 or imprisoned for not more than 30 days, in the discretion of the court.　Raleigh City Code, Chapter 23, Section 10.'

"6. The Charter of the City of Raleigh provides as follows:

" 'All ordinances, rules and regulations of the City of Raleigh now in force or that may hereafter be enacted by the Board of Commissioners in the exercise of the police powers given to it for sanitary purposes, or for the protection of the property of the city, unless otherwise provided by the Board of Commissioners, shall, in addition to applying to the territory within the city limits apply with equal force to the territory outside of said city limits within one mile in all directions of same and to Pullen Park and to the right of way of all sewer, water, and electric light lines in the city, without the corporate limits, and to the rights of way without the city limits of any street railway company, or extension thereof, operating under a franchise by the city and upon all property and rights of way of the city outside the said corporate limits and the above mentioned territorial limits, wheresoever the same may be located. Article 5, Section 10, Raleigh City Code.'

"7. The plaintiff paid the tax under protest to the City Tax Collector and brings this suit to recover the amount of taxes and penalty paid; all of the above facts having been stipulated and agreed to by the parties.

"In addition to the foregoing findings of fact based upon the stipulations of the parties the Court makes the further additional findings from the evidence introduced in the cause:

"The plaintiff firm regularly and customarily makes purchases of such articles of junk as old automobiles, automobile frames, tires, scrap iron and scrap copper from a large number of persons and firms having these articles for sale within the City of Raleigh, and regularly deals with practically all of the automobile dealers and tire stations in said city, buying quantities of old tires, car frames and cars in a unit, and selling individual items from old cars to garages and mechanics of the City of Raleigh.　A large portion of the purchases made by the plaintiff firm are the result of telephone communications from the place of business of the seller to the plaintiff and in some instances the goods bought are delivered by the seller upon his trucks while in other instances and in particular where large and bulky junk is bought, the same is delivered to the plaintiff's place of business on his own vehicles.　Sales of indi-

vidual items from old cars and similar sales are generally had by inspection and examination of the articles by the purchaser at the plaintiff's place of business outside the city limits.

"It is agreed by all parties and the Court finds as a fact that the amount of goods and junk bought by the plaintiff under the above circumstances from firms in the City of Raleigh, amounts to approximately $10,000 a year. The Court further finds as a fact that said firms and dealers having junk for sale generally and usually communicate with the plaintiff by telephone and receive competitive bids for the aforesaid article and where the price offered by the plaintiff is the highest the property is sold to it.

"Upon the foregoing findings of fact the Court holds as a matter of law that the plaintiff is engaged in the business of buying and selling and dealing in what is commonly known as junk, within the city of Raleigh, which is a city of more than 30,000 population and, further, that the plaintiff is subject to the tax imposed under the ordinance of the city of Raleigh.

"Upon the foregoing findings of fact and conclusions of law it is, therefore, considered, ordered and adjudged by the Court that the plaintiff have and recover nothing from this action and the defendant its costs.

"This, the 28th day of February, 1941.

J. WILL PLESS, JR., Judge Presiding."

To the foregoing findings of fact and conclusions of law, the plaintiff excepted, assigned error and appealed to the Supreme Court.

*Jones & Brassfield and Armistead Jones Maupin for plaintiff.*
*Alfonso Lloyd for defendant.*

CLARKSON, J. Plaintiff paid the junk dealers' license tax levied by the defendant, city of Raleigh, under protest and brought this action to recover same. N. C. Code, 1939 (Michie), sec. 7979.

This action has been before this Court heretofore. *Weinstein v. Raleigh,* 218 N. C., 549. It was there held: "Where in an action against a municipality upon an agreed statement of facts to recover a license tax paid under protest, the facts agreed are ambiguous and conflicting so that it is not clear whether the right to levy the tax was asserted upon the ground that plaintiff was carrying on the business specified within the city, or whether the city contended it had the right to collect the tax on the business located and carried on outside the city limits but within two miles thereof, the case will be remanded so that the statement of facts may be amended to remove the ambiguity or so that, if the parties fail to reach an agreement, the controverted facts may be submitted to a jury."

The only question presented on this appeal is whether the plaintiff, junk dealers, were "buying and/or selling material commonly known as junk, within the City of Raleigh," under the provisions of the city ordinance and section 168 of the Revenue Act of 1939, chapter 158.   Under the facts found by the court below, we think plaintiff was.   The record shows that the parties to the controversy agreed that the court below could "hear the evidence and find the facts and render judgment thereon." The court below found: "The plaintiff firm *regularly and customarily* makes purchases of such articles of junk as old automobiles, automobile frames, tires, scrap iron and scrap copper from a large number of persons and firms having these articles for sale within the City of Raleigh, and *regularly deals* with practically all of automobile dealers and tire stations in said city, *buying quantities* of old tires, car frames and cars in a unit, *and selling* individual items from old cars to garages and mechanics of the City of Raleigh," etc.

Upon the findings of fact the court below held as a matter of law: "That the plaintiff is engaged in the business of buying and selling and dealing in what is commonly known as junk, within the City of Raleigh, which is a city of more than 30,000 population, and, further, that the plaintiff is subject to the tax imposed under the ordinance of the City of Raleigh."

We think the following cases support defendant's contentions: *Hilton v. Harris,* 207 N. C., 465; *S. v. Bridgers,* 211 N. C., 235, as well as the opinion of the Court in this case on the former hearing.   See *S. v. Johnston,* 139 N. C., 640.

The case of *Kenny Co. v. Brevard,* 217 N. C., 270, is distinguishable from the present case.   It was said in *Hilton v. Harris, supra,* at p. 473 : "If the plaintiffs were not required to pay this tax for the trade or business it carries on in Concord, a situation would arise that those living in Concord and carrying on this kind of trade or business, who paid the tax—it would injure their business, as they would have to pay a tax of $100.00 and the plaintiff would not; consequently, the plaintiffs would undersell the Concord bakers.   Such favoritism would tend to monopolize and, in time, destroy competition, which is sometimes called 'the life of trade.' "

For the reasons given, the judgment of the court below is
Affirmed.

STACY, C. J., concurring in result:   The trial court concluded, from the facts found in accordance with the stipulation of the parties, that "the plaintiff is engaged in the business of buying and selling and dealing in what is commonly known as junk within the City of Raleigh."   The conclusion is supported by the finding that the plaintiff regularly deals

with practically all the automobile dealers and tire stations within the city, "buying quantities of old tires, car frames and cars in a unit, and selling individual items from old cars to garages and mechanics of the city of Raleigh."

Even if it be conceded that a contrary conclusion is arguable from the finding, "sales of individual items from old cars and similar sales are generally had by inspection and examination of the articles by the purchasers at the plaintiff's place of business outside the city limits," it does not follow that an erroneous interpretation has been placed upon the record. The presumption is otherwise. *Jackson v. Bell*, 201 N. C., 336, 159 S. E., 926.

This is the only question presented by the appeal. The judgment results from a permissible understanding of the evidence and the determinations made thereon. It is not contended that buying within the city limits or making purchases therein, without more, would require a dealer's license.

BARNHILL and WINBORNE, JJ., join in this opinion.

SEAWELL, J., dissenting: I dissent on the ground that the taxing statute refers throughout to a located business and not to the type of transactions described in the opinion. Any other construction, applied to the State tax, would lead to an absurd situation—would result in double, triple, and multiple taxation, although he had but one place of business. It would leave the schedule set out in the Act without meaning. The power of the city to tax is expressly referred to the State levy, and is limited to the same condition—the presence of a located business. The statute uses terms of physical measurement. The city authorities recognized this as the proper construction in their ordinance imposing the tax. Under the reasonable interpretation of the statute—without straining at the bolts—the city is not authorized to tax a business located beyond its boundaries.

The effect of the decisions is to build up another of those trade barriers which experts in the commercial field point out as one of the major curses of this country. Its principle and effect is that of a local protection tariff, with multiplied opportunities of retaliation. I have no idea that the Legislature intended to enact a law of such extensive application, or to adopt a policy so retrogressive.

SCHENCK, J., concurs in this opinion.